I did want to, I really can't pass up the fact that this is September 11th, the 14th anniversary of that tragic event and I just wanted to note it and perhaps just a few seconds of silence in memory of those who lost their lives that tragic, tragic day. Thank you. We'll call our first case. Harmon v. Lamar. Is it Mr. Tanglin? Yes. Am I pronouncing that correctly? That's correct. All right, very well. Good morning. May it please the court, my name is Lucas Tanglin with Kay and Dal Gates, counsel for the appellant Leslie Harmon. I would like to reserve three minutes, please. Very well. Thank you. Mr. Harmon was convicted in Pennsylvania State Court on counts related to a single shooting involving a single victim. He was sentenced to separate consecutive sentence for both attempted murder and the lesser included offense of aggravated assault. These sentences violated the multiple punishments doctrine of the double jeopardy clause. Can you walk me through what we have to find under what standard in order for you to succeed? In other words, we've got to address whether double jeopardy was adjudicated on the merits. Then we've got de novo review, et cetera. But even then you have a hard factual finding, don't you, with respect to the fact that you say it was one event and the state court said it was two events. So can you walk me through the reasoning, how you get there? There was a recent district court case that was actually determined a few days after Mr. Harmon's initial brief was filed. And the approach that the court took to that question was well reasoned. District court, which district? The eastern district. Of Pennsylvania. Of Pennsylvania. And it's a case that's now on appeal. The case is called Wilkerson and it's discussed in Mr. Harmon's reply brief. I guess it will come to us. It's pending now, right? It is. It's pending now. It's Judge Diamond's decision, correct? It stayed pending the outcome of this appeal, actually. It was a decision by Judge Diamond? I believe it was. All right. The ultimate inquiry, the approach that that district court took was it applied the question of whether the separate convictions, whether it's reasonably likely that the separate convictions arose from the same conduct based on a review of the trial court record. But would we have to find it was an unreasonable ruling by the state court? It was a factual finding that was unreasonable, correct? Yes. If we are in the EDPA world of review, it would be an unreasonable factual determination or unreasonable or contrary application of federal law. Although Judge Ruder and Judge Prater found it to be fine, correct? I mean, didn't dispute the fact that there were two separate occurrences. They didn't dispute. And their opinions do not reflect that they considered certain very important parts of the trial court record, especially the commonwealth's own theory at trial that the very first shot constituted attempted murder, which is, of course, inconsistent with the later theory at sentencing that the first shot was mere aggravated assault. What's our standard of review? Is it clearer? The standard of review that we're within. Well, it depends on whether it was adjudicated on the merits, doesn't it? I mean, if the double jeopardy issue was adjudicated on the merits, then we have a very deferential standard. But if it wasn't really decided, then it's de novo, isn't it? It is de novo if it wasn't reviewed on the merits, and the state appellate courts did not get any indication that they were determining a federal double jeopardy issue. Well, how is it different? I mean, you argue on the one hand that you fairly presented the claim, even though you never cite the double jeopardy clause. Don't even cite in the state appellate decision a federal court case. You cite the Anderson case out of the Commonwealth, which did recognize that the merger doctrine is similar to or maybe the same as the test articulated in Blockburger. So if you're claiming that you fairly presented the double jeopardy claim through the merger issue that you raised, isn't it fair to say then that the claim was adjudicated on the merits in the Pennsylvania courts? Whether or not that's fair to say is governed by the separate lines of authority that govern the fairly presented issue and the issue of whether a claim was actually adjudicated on the merits by the state courts. And the way the law has developed in habeas corpus is that those are separate lines of authority. But is the test for the merger doctrine the same as the test for double jeopardy purposes? They're very similar and certainly very related. I do not know that. The more they're related, aren't they? Haven't the cases said it's the same doctrine? They are very similar. Anderson said they're identical. Anderson said that for purposes of determining lesser included offenses, they would follow the Blockburger analysis. It might be possible that there are other differences within the larger doctrines. But regardless of the de novo standard of review or the EDPA standard of review, there does need to be an independent review of what happened at Mr. Harmon's trial in state court. Give us your best argument as to how what is on 188 of the appendix, which is the brief that Kerry Zrodowski filed in the Superior Court, how it fairly, it's just one page, how does it fairly present the double jeopardy issue? This court's decision in McCandless describes several ways that a federal claim can be presented. One of those ways is through the citation to state court decisions, which in turn discuss and apply the federal analysis. Mr. Harmon's state court filings cited the Commonwealth v. Anderson case, Pennsylvania Supreme Court decision. Your reference to McCandless is a little bit vague. It says reliance on state cases employing constitutional analysis in like fact situations. Are you saying that that was done? It was. In Anderson, as you noted, they stated that they were applying the Blockburger test for at least a portion of their state merger analysis. And then another way under McCandless is the assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution. That might be your best slot or your best prong. Yes, it was certainly fairly presented in that manner as well. The Rutledge Supreme Court decision in 1996 stated that for over half a century we have determined whether a defendant has been punished twice for the same offense by applying Blockburger. In light of that decision, Mr. Harmon's state court briefings did allege a pattern of facts well within the mainstream of constitutional litigation and asserted a claim in terms so particular as to call to mind a particular constitutional right. In addition to the commonwealth statements at trial that the first shot constituted attempted murder, there are other portions of the trial court record that demonstrate that the convictions for attempted murder and aggravated assault is... If we have to use AEDPA's deferential standard for the state court decision, how is the result reached by the Pennsylvania Superior Court contrary to war and unreasonable application of Supreme Court precedent? It's an unreasonable application because it ignores important parts of the trial court record including the commonwealth's inconsistent statements. The jury charge told the jurors that the offenses and those other elements and instructed them that they should find Mr. Harmon guilty if those elements were satisfied. There was no warning that the jury should not base convictions on the same conduct. The jury verdict slips in Mr. Harmon's trial give no indication that the convictions were based on separate conduct. But under the standard that Judge Vineski references, wouldn't that require distinguishing the facts of this situation, which are undisputed, from the facts of other controlling precedent that... Well, distinguishing them and saying, well, this is different because here there was no change in weapon, there was no change in time, no stoppage. And can you find those distinctions in Supreme Court precedent? A squarely on all fours factually identical decision, I'm not aware of. But the Supreme Court precedent that does exist cannot be applied reasonably to this case without taking into account the important parts of the record that seem to have been overlooked to this point. And as well, there is the other prong of the EDPO review of an unreasonable determination of facts. Now, which standard is applicable to the determination that it was one event versus two events? Are we talking about unreasonable application of Supreme Court precedent or unreasonable findings of fact? They're both applicable. For example, in the Wilkerson case that I just mentioned, the district court analyzed under the unreasonable application of clearly established federal law. But both are applicable. Another aspect of the trial court record that supports the conclusion that the separate sentences did arise from the same conduct is the testimony of the alleged victim whose testimony was that he was shot once in the back, turned around, and his attacker just kept on shooting. So he took the time to throw his son over to the doorway, right? That was his testimony. Well, isn't that a change in time? It's a change in time. There's always going to be a change in time between shots fired. But that does not explain a new intent being formed. It does not establish a break in the chain type of analysis that the Pennsylvania state courts have used. Couldn't you find that there was a shot in the back and that was the aggravated assault and then there was a struggle, and during the struggle, the intent to commit murder was formed? Theoretically, that might have been found in a case where that was the theory that was tried. But the Commonwealth's very clear theory, they called this an attempted execution that Mr. Harmon is supposed to have walked up with intent to kill, and the very first shot fired was attempted murder. With the benefit of putting that very simple theory of the case before the jury, they were able to secure the convictions and then reverse course with a new theory at sentencing in order to avoid the merger. Yet this wasn't raised at sentencing, right, the about-face by the government. There wasn't any protest or objection, was there? It was not. There was no. Thank you. Thank you. Thank you. All right, Mr. Goldsboro. Your Honor, good morning. May it please the Court. I'm Assistant D.A. John Goldsboro from the Philadelphia D.A.'s Office Federal Litigation Unit, representing appellees, respondents below. Would you show us what in the transcript, in the record, shows that they are two separate offenses? Yes, Your Honor. Just a moment. This is initially a multiple-sentence question, which never arises before sentencing. And at sentencing, the sentencing judge said, I agree with the Commonwealth, this is on page 158A of the appendix, I agree with the Commonwealth that the first time is an aggravated assault and the next six shots are an attempt to kill Mr. Mitchell, making it an attempted murder. Well, what's the point, sir? I thought Judge Slover wanted to know what the transcript from the testimony at trial would make it seem. Well, my point here is, under Missouri v. Hunter, the question of sentencing, multiple sentencing, is a question of legislative intent,  and under Pennsylvania law, every state has a different approach to ascertaining legislative intent. And in Pennsylvania, that approach does not include looking at the trial evidence, the arguments, the convictions, the guilt face. It only looks at it in retrospect, at sentencing. But the sentencing judge has to look and see if there is a break? Yes, exactly. And what supported the sentencing judge's determination that, aha, there was a break here? It's simply the fact that, Your Honors, we were just discussing with my learned opponent, that the victim turned around and threw his son into the doorway, and the sentencing judge agreed. Why does that make a difference between the two offenses? I mean, he could have sneezed, for heaven's sake. I mean, yes. It's been found in multiple different cases throughout the country. Well, which case is analogous? Because as I read the cases, there was some break. Either they went from a baseball bat to a gun, or there was something that says, aha, these were separate. And here, the fact that you turn around and throw your son. If we're just looking at Pennsylvania cases, I agree. Now, initially, Your Honors, I'd like to apologize. What's your best case? You said there are cases around the country. What's your best case? Just a moment. I'm sorry. I apologize for my just coming in at the last minute. We're overwhelmed in my office, and I was unfamiliar with this case until a week ago, and, in fact, unfamiliar with this area of law. I've been doing research even late last night. I found some cases from around the country. We really don't expect a lawyer for the government to come before us and say, gee, I don't know what this is about. Well, I apologize. Our resources are very strained. We're a city-funded office only. We don't get any other tax dollars. That's it. And there are eight of us. There used to be 11 of us. And I apologize. But tell us about the cases from around the country. You shared these with your colleague. I have, indeed. And I'm going to file a 28-J letter. I apologize for not doing so, but it was so late last night when I found them that it's very recent. One of them is actually a very recent case. It's Velez v. Clorinda, 791 F. 3rd, 831. It's 8th Circuit, 2015. Go a little more slowly, please. Yes, 791 F. 3rd, 831. It was an Iowa prosecution, and it upheld a similar habeas challenge to multiple punishments. You're saying the facts are somewhat similar? The facts are somewhat similar. The state court there found this was a beating. The state court there found as a matter of state law that there was a break in the action during the criminal episode, which authorized punishment for two different assaults. Okay, but what happened? Maybe it was a beating and then went and got a gun, or was it a beating and then it continued beating? No, it was just a temporal break. That's it. There wasn't a change in his mentality. How long was the temporal break? I couldn't tell you off the top of my head. I apologize, but it was short. But doesn't it matter? It was short. Well, I believe it does, but there are other cases where there's a much shorter temporal break. Okay. Here's another one. Stoddard v. Secretary. It's an 11th Circuit case in 2015. 600 F Appendix 696. Now, it's not precedential, but it's similar. This was a sexual assault case, sexual batteries, actually, under Florida law. And the Florida courts there found there was a spatial or temporal break. And there were two, actually. There were three separate punishments for three separate sexual batteries arising from one incident. One of the breaks was the victim ran and locked herself in the bathroom. But the other one, I think, is more relevant here, which is that the court found that there were two different positions used. And the 11th Circuit agreed with the district court that that was a reasonable fact finding, given the evidence, and that that was a reasonable application of and not a contradiction of United States Supreme Court holdings. We also have one from the District of Delaware in 2006, Spencer v. Carroll, which is 450 F sub second 452. Would you say that more slowly? Yes, I apologize. We'll give you more time. Thank you. It's 450 F sub second 452, District of Delaware 2006. There were two gunshots to the victim while he was pumping gas. The first was to his knee, as he and the defendant were arguing, and the second was after the victim turned away about four seconds later. He was sentenced separately for the two assaults. The Delaware court, using its own jurisprudence. Was he shot somewhere different? Yes, not in the knee. I think the second was in his back as he was turning away. Well, that's not like the case that we have here. All the shots were to the back. No, that's incorrect, Your Honor. The first shot here was to the back as the victim was holding his son. And then the second shot, he threw his son into the doorway. And then the second shot shot off his finger. And then we had four shots to the stomach. And one was down to the ground and one to the leg. So we had a total of seven shots. It's one thing if the first one were the less egregious. Right? If the first one were, you know, in the shoulder or something. When we initially shot in the back, and it's characterized as an execution, to me it's a little bit distinguishable in terms of the intent being exactly the same for the whole scene. So the Pennsylvania test doesn't look specifically like that. It's a little different. And then you're telling us all these other cases. Are these cases even applicable? Yes, they are. This is a case called Applying Missouri v. Hunter, which says the state courts are the judges of the state legislative intent, which is the only question in more than one case. Unless they're clearly erroneous. Well, as you see, every state has its own method of doing it. And in Pennsylvania, there are two questions. And this is embodied in the Pennsylvania merger statute that's cited in the brief. And that statute embodies the very same approach that was taken in this case and in the Pennsylvania Supreme Court cases in the Superior Court that the Superior Court cited. But that approach is first you look to see if there are multiple acts or a single act. And only if it's a single act do you then go to the blockburger test. And that's been the law in Pennsylvania for quite some time. The determination of acts, yes, takes into account the facts, but it also looks specifically were all the elements present. And did the defendant do more than was required to meet the elements? In other words, commit more criminal acts. Now here, I think what he's saying is I want a volume discount on my shots. I want some free shots here. I'm sorry. Well, wait a second. How many shots does it take for an attempted murder? Four? Three? The first shot was probably sufficient for attempted murder. That's the problem for the Commonwealth case. Each and every one of them, I think, could be sufficient. And each and every one of them could be sufficient for aggravated assault. Well, but how many months' sentence do you need to get for what happened here because he turned around? I mean, had he not wanted to get his son out of harm's way. But it was sufficient time. I mean, you can form intent in an instant. But the sentence here is just. . . He had a moment. Now, there's one other case that I'd just like to point to. The jury along your theory. . . Pardon me? Was the jury charged that way? That is not one of the Pennsylvania inquiries. And the answer is the jury was not charged that way? The answer is no, but that is not a factor under the Pennsylvania analysis under Missouri v. Hunter, U.S. Supreme Court case. I just briefly, if I could, would like to address. . . In state court, this was only raised as a Pennsylvania sentencing legality question. Now, it was limited on its face to state law, and Duncan v. Henry says you can simply say federal. Baldwin v. Reese and Howell v. Mississippi also say a daisy chain of citation isn't enough. Just simply citing a state court case isn't enough. McCandless says an assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution. And the issue, as stated, at 188 says, Appellant received an illegal sentence when the trial court imposed consecutive sentences for the crimes of attempted murder and aggravated assault where there was one victim injured in one episode. Doesn't that call to mind double jeopardy? I mean, don't the bells go off? Consecutive sentences for one episode? Yes. Perhaps that is, as Your Honor said, the best argument that my opponent has here. However, the question is . . . Don't you have to answer that argument? I think one could say that merger might call to mind multiple punishments, especially when . . . Well, it certainly did in Anderson. Yes. It's weird that in Anderson the court kind of gratuitously . . . Well, it's not just there, and I wanted to point out, too, this is a very helpful opinion. By the way, Supreme Court Chief Justice Rehnquist called this area a Gordian Knot. Well, why does that help us? Well, it's because multiple punishments . . . Because he got on Twitter. Multiple punishments is a completely different double jeopardy analysis from successive conviction analysis. And the two areas . . . There's a very good article by Villanova Law Professor Ann Poulin about this saying that essentially . . . This is tough. It's a 2006 article. This is a tough area because these two analyses of legislative intent for multiple punishments . . . and of successive convictions require a completely different analysis. And they have become muddled and merged together in a way that confuses things. And if we were just . . . What we have to do to look to and analyze the multiple punishments here . . . is we have to look simply to the state legislative intent. And we have that. We have the merger statute. We have the states construing the statutes over time. And I think that's the . . . I think that was the point of this whole waiver question in the brief . . . that frankly I was a little bit confused by in our web brief. But I think that's the whole point. By you agreeing, maybe you were confused by me. I should point out that the . . . I know you have less people now. Yes, yes. And this was our former chief just before he left. And I wasn't able to discuss it with him, of course. He's now retired. So . . . But Anderson is helpful. But it's not only a confused area in U.S. Supreme Court jurisprudence. It's also been in the past in Pennsylvania Supreme Court. But the Pennsylvania Supreme Court after this case did clarify, in a very helpful opinion, Commonwealth v. Baldwin, which is a 2009 case. And I highly recommend that to the court because it finally, to me anyway, explains exactly what Pennsylvania law not only is . . . Well, explain that to us. Yes. I apologize. I thought I was. I'm trying. Well, we don't need to get that far. We just need to find that one of the prongs under McCandless has been satisfied by virtue of what they did. It's fairly . . . So here's the thing. So once we're there, let's say it is fair presentation because Pennsylvania and federal law are coextensive. Let's just say that. 2013 U.S. Supreme Court case says when that's so, then the denial of a claim by the state courts is a denial of a federal claim. All right. So we get epideference. We get epideference. And, you know, whether we have epideference or not, the factual finding of the state court that there was a break and that there were two acts and not one is due deference. It doesn't matter whether we're in EDPA or not. Even if it's de novo review, the factual findings are still deferred to. E1 still applies regardless of whether we're in EDPA or in de novo. What's your best case on that, you're saying, Johnson? Just a moment. Give me your best case for the fact that this is essentially a factual finding as compared to we might find it an unreasonable application. A factual finding. Well, just a moment. First of all, NARA says it's ‑‑ this is a case of this court that says that it applies, E1 applies, regardless of whether there's epideference. But as to whether it's a factual finding or a mixed question, I can only point to those cases that I spoke about already. And I'd like to add one more, which is Tracy v. Olson. It's a District of Massachusetts 2005 case. It's 400 F sub second 393. There, there were five gunshots within 30 seconds. The Massachusetts court found that this was two criminal acts because the defendant stepped toward the victim during the shooting. Now, are these all habeas from state court? Yes, they are indeed. So, and just I see my time is up. Close it out. We'll give you some more time. Thank you. My opponent, as I believe your honors alluded to, points to no clearly established U.S. Supreme Court holding or even precedent requiring that these two criminal acts be interpreted as one or showing that it was unreasonable of the state courts to so find and no holding that the state courts unreasonably applied or somehow contradicted in finding multiple punishments authorized here. If I might just very quickly take a look. Oh, your honors, there's one other case that I want to bring to your attention. It's a case of this court from 1988, Gillespie v. Ryan, 837 F second 628. In footnote 2, this court held that. Was that before, Edpa? Yes. This court held that when state courts are required to look for legislative intent, as they are here under Missouri v. Hunter, if they don't explicitly say that they're looking for legislative intent, but the state law that they cite does say that that's what they have to do, that's what they're doing. They don't need to say we're looking for legislative intent. They didn't in this particular case. The Superior Court didn't. But the cases that it cited all did. Your honors, if there are no further questions. Thank you. Thank you. Thank you very much, Mr. Goldsberg. Mr. Tainman. Thank you. I've had an opportunity to quickly review these cases that were brought to my attention this morning. They appear to all be distinguishable in important ways. One of the cases, the Tracy case that Mr. Goldsberg has brought to my attention, involved an application of a different legal question, which is the threshold question of whether two offenses are lesser included offenses of one another. This involved a case where one of the offenses was assault with intent to maim, which required proof of different elements than the other offense. That's not helpful here when there is no dispute that in Pennsylvania, aggravated assault is a lesser included offense of attempted murder. The other cases are similarly distinguishable. At least one of them involves a plea agreement where the defendant pleaded guilty to two different counts of the same offense. It makes sense that he could not turn around and say, well, I was actually only pleading guilty to one count and can only be sentenced on one count of that offense. The Pennsylvania Supreme Court, in a decision called Belsar in 1996, discussed the contours of the State Merger Doctrine and the importance that that doctrine plays in properly limiting sentences for one offense. I meant to refer to the Gatling decision from 2002, a plurality decision. In that case, the court observed that without a break in the chain requirement to justify separate sentences, a defendant could be charged separately for each gunshot fired. If it was a five-shot shooting, there could be a separate sentence for each. The Pennsylvania courts, in that case, viewed that as an absurd result. That's the same type of reasoning, though, that was applied to Mr. Harmon at his sentencing. How many more years does the second sentence add to his prison sentence? It added 10 to 20 years. The sentence for attempted murder was 20 to 40 years. The sentence for aggravated assault is 10 to 20 years. What would be the result if we were to find that double jeopardy rights were violated in this matter? The result would be that the case would be remanded to the district court based on the holding that the double jeopardy clause was violated. At that point, it could be remanded for additional proceedings, and the district court could craft the appropriate remedy. Resentencing, basically. I'm sorry. Wouldn't it be resentencing? The district court might issue a conditional habeas order requiring that, yes, Mr. Harmon be resentenced consistent with the double jeopardy clause. How long has he served? He's served over 10 years now. We'd ask that the district court be reversed, and thank you. Thank you. Yes. I want to thank you, Mr. Tanglin, very much for taking on this representation for you and your firm. The briefs that you filed in this case are extremely well-prepared, and the case has been well-argued. And we, I know I speak for Judge Slover and Judge Rendell, are very grateful that you and your firm are willing to take on these types of matters. They're of great assistance to our court. Thank you very much. Thank you.